UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

RICHARD T. COLE,

    Plaintiff in 2:15cv419,
    Defendant in 2:15cv479,

v.

WADID DAOUD,                    Civil Nos. 2:15cv419
                                    & 2:15cv479

DAOUD INVESTMENT HOLDINGS, INC.,

    Defendants in 2:15cv419,
    Plaintiffs in 2:15cv479,

and

KENT J. GEORGE,

    Defendant in 2:15cv419.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Richard Cole ("Cole"), following bankruptcy of a struggling business venture, has sued his partners alleging various business tort claims and defamation. Simultaneously, two of his targets had filed suit against Cole in Florida, asserting that Cole defrauded them by selling unauthorized stock subscriptions to a related entity and misappropriating the proceeds. The Florida court resolved the parties' jurisdictional arguments, sending the Florida case here, and both cases were then referred to the undersigned United States Magistrate Judge to recommend disposition of various dispositive motions under Rule 12.

1

Finding insufficient factual allegations to plausibly support any of the challenged counts, this report recommends that the dispositive motions be granted.

## I.    PROCEDURAL HISTORY

Cole's Virginia Complaint, docketed as case number 2:15cv419 ("419"), includes four counts – (1) defamation, (2) tortious interference with business contract and/or expectancy, (3) fraud, and (4) civil conspiracy.[1]  Compl., No. 2:15cv419 (ECF No. 1).  In response to this, Defendant Kent J. George ("George") filed three motions to dismiss with accompanying memoranda.  (ECF Nos. 3, 5, 7).  George's first motion (ECF No. 3) seeks to dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and improper venue under Rule 12(b)(3).  George's second motion (ECF No. 5) seeks to dismiss the Complaint under Rule 12(b)(5) for insufficiency of service of process, and his third motion (ECF No. 7) seeks dismissal for failure to state a claim pursuant to Rule 12(b)(6).  Defendants Wadid Daoud ("Daoud") and Daoud Investment Holdings, Inc. ("DIH") also seek to dismiss the Complaint for failure to state a claim as to Counts II, III, and IV.  (ECF No. 16).  Cole opposed all these motions (ECF Nos. 13, 14, 15, 26), the Defendants replied (ECF

---

[1]  Cole alleges Count I – defamation – against Defendants Daoud and DIH only.  Counts II to IV are alleged against all three 419 Defendants – Daoud, DIH, and George.

Nos. 20, 21, 22, 28), and all the 419 motions are ripe for review.

In addition to Cole's claims against Defendants Daoud, DIH, and George in the 419 case, Cole, Daoud, and DIH are also parties to the second suit originally filed in Florida, which arises from the same business transactions. In the Florida case, now docketed in this court as case number 2:15cv479 ("479"), Daoud and DIH filed suit against Cole in Florida state court. See No. 2:15cv479 (ECF No. 1-1). After removal to the United States District Court for the Southern District of Florida, Cole counterclaimed asserting essentially the same claims already pending against Daoud and DIH in the 419 case. (ECF No. 1). Plaintiffs Daoud and DIH moved to dismiss Cole's Counterclaim for failure to state a claim. (ECF No. 19). Before ruling on this motion, the Southern District of Florida granted Cole's Motion to Transfer Venue to the Eastern District of Virginia. (ECF No. 5). The motion to dismiss Cole's Counterclaim in the 479 case raises identical arguments to those asserted by Daoud and DIH in their 12(b)(6) motion to dismiss Cole's original Complaint in the 419 case. Accordingly to simplify the analysis, they are reviewed together in this report.

## II.  STATEMENT OF FACTS

In 2013, Cole formed Waypoint Partners, LLC ("Waypoint"), a Virginia limited liability company, with George and several others.[2]  Compl. ¶¶ 2, 8, No. 2:15cv419 (ECF No. 1, at 2). George was the Manager of Waypoint and held a 10 percent membership interest, and Cole held a 25 percent membership interest.  Id. ¶ 8.  Waypoint's primary asset was a 51 percent ownership interest in Viridia, LLC ("Viridia"), a Virginia limited liability company.  Id.  Viridia was formed to implement a "multi-level or network marketing structure" for the sale of cosmetics.  Id. ¶¶ 9, 12, 15 (ECF No. 1, at 3).  Cole was chief executive officer ("CEO") of Viridia, and together with George, worked to establish a budget and business plan for Viridia.  Id. ¶¶ 1, 10-12.  The business plan called for capital requirements of $2,800,000.00, and George's role in the company was to "provide (or raise) the $2,800,000 of capital necessary to implement the Plan."  Id. ¶ 14. Cole's Complaint alleges that George failed to provide the required funds, and that as a result, Viridia was unable to pay its bills, such as Cole's salary, and Cole had to contribute his own money to pay the operating costs.  Id. ¶¶ 15-16.

---

[2]  Consistent with the appropriate standard of review, the recited facts are drawn from the 419 Complaint, the 479 Counterclaim, and their attachments, and taken as true for purposes of these motions.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Daoud eventually became an investor in Viridia. On April 4, 2014, he and Cole discussed Viridia's financial problems, and Daoud "formed DIH for the sole purpose of providing funds for Viridia." Id. ¶¶ 17-20 (ECF No. 1, at 4). During the negotiations, Daoud assured Cole that he had the funds to support Viridia and that he would pay Cole's salary, as currently owed, and in the future, if he continued to work for the company. Id. ¶¶ 22-23. George, Waypoint's managing member, was tasked with negotiating the terms of Daoud's investment. Id. ¶ 26. On May 29, 2014, George and Daoud reached an agreement - confirmed in an exchange of e-mails - which provided that Daoud would assume control over Waypoint and become the manager of Viridia. Id.; see Aff. of Kent J. George in Supp. of Rule 12(b)(6) Mot. Dismiss, No. 2:15cv419 (ECF No. 8-1) (attaching the May 29, 2014, e-mail exchange and various proposed transactional documents, such as the proposed Warrant for Viridia and proposed Exercise Notice). Cole alleges that George and Daoud told him that under the agreement, Daoud would commit to fund at least $1,425,000.00, and if after that funding, Viridia's viability "was good" - as determined at the end of 2014 - Daoud would provide additional funding as necessary. Compl. ¶ 26, No. 2:15cv419 (ECF No. 1, at 4). The terms of the May 2014 funding agreement are contained in an exchange of e-mails upon which Cole, George, and Daoud all rely.

5

Aff. of Kent J. George (ECF No. 8-1); <u>see also</u> Viridia, LLC
Warrant to Purchase Class C Shares with Call Rights (ECF No. 1-
2).  For Viridia to receive the funds from Daoud, George and
Daoud told Cole that he first "had to transfer his 25%
membership in Waypoint to DIH ... to give Daoud control over
Waypoint ... [as] justified by Daoud's significant commitment of
capital."  Compl. ¶ 27, No. 2:15cv419 (ECF No. 1, at 4).

Following the e-mail exchange in May 2014, the parties
drafted several related agreements to implement the terms
outlined in the e-mail.  <u>Id.</u> ¶ 29 (ECF No. 1, at 5).  On July
24, 2015, electronic signature pages for the transaction
documents were circulated, and Cole alleges that the pages
purported to include all of the necessary signatures.  <u>Id.</u> ¶ 32.
As part of the transaction, all of the parties were to agree on
an Investment Agreement (ECF No. 1-1), which provided for DIH to
invest up to $1,425,000.00 in Viridia.  Compl. ¶ 34, No.
2:15cv419 (ECF No. 1, at 5).  The agreements also had forum
selection clauses that established "exclusive jurisdiction in
the state and/or federal courts in the Commonwealth of
Virginia."  <u>Id.</u> ¶ 35 (ECF No. 1, at 6).  In addition to the
Investment Agreement, Daoud was to agree on the terms of a
Warrant, spelling out the investment he would receive on
advancing additional funds to Viridia.  <u>See</u> Viridia, LLC Warrant
to Purchase Class C Shares with Call Rights (ECF No. 1-2).  Both

6

George and Cole executed Assignments conveying their interest in Waypoint to DIH.   See Assignment of Membership Interests (ECF No. 1-5).   Following receipt of the various documents comprising the transaction, Cole assigned his "25 Class B shares in Waypoint to DIH," and alleges these shares had an agreed value of about $726,750.00.   Compl. ¶ 33, No. 2:15cv419 (ECF No. 1, at 5).   On July 25, 2015, Daoud represented to Cole and others that the transaction was closed, and the parties proceeded as if the transaction was closed.   Id. ¶¶ 36-38 (ECF No. 1, at 6).   Daoud, in his capacity as manager of Waypoint, apparently did not execute a call on the Warrant, and did not invest an additional $1.4 million in Viridia.   Neither Waypoint nor Viridia are parties to this action.   In addition, Cole has not alleged a breach of contract against any of the individual defendants. Instead, Cole now alleges that "Daoud and George had no intention of effecting the Transaction and had no intention of creating an enforceable obligation to provide funding."   Id. ¶ 39.

After the transaction was supposed to have closed, Daoud asked Cole to prepare a private placement memorandum for DIH in order to raise equity capital, and DIH was then supposed to use that equity capital to fund Viridia.   Id. ¶ 40.   Because of Cole's work in drafting the private placement memorandum for DIH, Cole alleges that Daoud agreed to give him an ownership

interest in DIH, and that he later confirmed this ownership in writing. Id. ¶¶ 41, 44. Daoud then accepted subscriptions on behalf of DIH. Id. ¶ 45 (ECF No. 1, at 7). When these investments were deposited into DIH's account, Daoud was to transfer the funds to Viridia as a loan. Id. ¶ 46.

In November 2014, Deborah Cox Wood ("Wood") offered to purchase shares in DIH, and when Cole told Daoud about Wood's offer, he voiced no objection. Id. ¶ 48, 50. Later, in February and early March 2015, Daoud was out of the country and not in communication with Cole. Id. ¶ 51. On March 4, 2015, Cole e-mailed Daoud, relating the particulars of Wood's subscription, and attached the subscription agreement's signature page for Daoud to sign as president of DIH. Id. ¶ 52. In Daoud's e-mail response, to which Wood was also copied, he stated: "I own 100% of Daoud Investment Holdings, Inc. You are not authorized to take any action with respect to the shares of Daoud Investment Holdings." Mar. 10, 2015, E-mail (ECF No. 1-6); see Compl. ¶ 54-56, No. 2:15cv419 (ECF No. 1, at 7). He also stated that Cole "had no right to sell a subscription or receive any money on behalf of Daoud Investment Holdings, Inc."[3] Mar. 10, 2015, E-mail (ECF No. 1-6); see Compl. ¶ 54-57, No.

---

[3] Daoud and DIH sharply dispute Cole's description of his efforts to secure funding by selling interests in DIH. In their claims against Cole, alleged first in the 479 case, they assert that it was Cole who misled investors by soliciting funds and not delivering the proceeds or accounting for their use. See Compl., No. 2:15cv479 (ECF No. 1-1).

2:15cv419 (ECF No. 1, at 7). Daoud then removed Cole as CEO of Viridia, and at the time of his removal, Cole alleges he was owed over $400,000.00 in past wages and loans to the company. Compl. ¶ 61, NO. 2:15cv419, (ECF No. 1, at 8). Shortly thereafter, Viridia was forced to file bankruptcy "due to the failure of DIH to provide funding to Viridia as agreed by the parties." Id., at 8 & n.1.

Cole's 419 Complaint alleges four claims stemming from the dispute over the related agreements comprising the transaction, as well as the actions of Daoud and George leading up to it. Tellingly, none of the claims assert a breach of contract. Instead his Complaint alleges: (1) defamation, against Daoud and DIH; (2) tortious interference with business contract and/or expectancy, against all defendants; (3) fraud, against all defendants; and (4) civil conspiracy, against all defendants. This report will consider each of the challenged counts alleged in Cole's Complaint, two of which are also alleged in his 479 Counterclaim.

Count I of the Complaint alleges that Daoud and DIH defamed Cole. Specifically, he alleges that Daoud's statements "constitute defamation and/or defamation per se in that they impute to Cole an unfitness to perform his duties as a member, shareholder, officer, and/or director of several business ventures in which Cole is involved." Id. ¶ 79 (ECF No. 1, at

9

9).  He also alleges that the statements were motivated by spite or ill will, and Daoud knew that the statements were false or he recklessly disregarded the truth.  Id. ¶¶ 80-81.  As a result of Daoud's statements, Cole alleges that he suffered a loss of reputation, emotional distress, and actual damages as evidenced by his "loss of employment by DIH and his position as CEO of Viridia."[4]  Id. ¶¶ 82-85.  (ECF No. 1, at 10).

In Count II, Cole claims that Daoud, DIH, and George tortiously interfered with a business contract and/or expectancy.  The contract allegedly interfered with is Cole's ownership interest in Waypoint.  In support of Count II, Cole alleges that "Daoud and George induced [him] to sign the Assignment [assigning his membership interest in Waypoint to DIH] by promising that Daoud (through DIH) would fund Viridia." Id. ¶¶ 89-90.  Further, he alleges that George and Daoud intentionally interfered with the parties' May 29, 2014, e-mail agreement - in which he alleges that Daoud committed to fund Viridia with $1,425,000.00 - by entering into a separate, "secret agreement whereby Daoud would not have any obligation to provide additional funding to Viridia."  Id. ¶ 92.  He also alleges that Daoud and George misled him about the status of their transaction by proceeding as though the transaction memorialized in the Investment Agreement and related documents

---

[4]  Neither Daoud, nor DIH, has moved to dismiss the defamation count.

had closed, but then failing to implement the Investment Agreement or its related Operating Agreement for Waypoint and Viridia. Id. ¶¶ 100-07 (ECF No. 1, at 11-12).

Count III alleges that Daoud, DIH, and George committed fraud. Specifically, Cole alleges that Daoud told Cole and others that he would provide sufficient funding to ensure Viridia became profitable. Id. ¶ 114 (ECF No. 1, at 12). Relying on Daoud's repeated assurances that he would fund Viridia and pay Cole's salary, Cole continued to work for Viridia and personally paid some of Viridia's expenses with his own money. Id. ¶¶ 115-19 (ECF No. 1, at 12-13). With regard to George, Cole alleges that George also "made statements to Cole with the specific intent that Cole would a) continue to work for Viridia despite not having been paid for months and b) continue to pay Viridia's expenses out of his own pocket." Id. ¶ 127 (ECF No. 1, at 14).

In Count IV, Cole alleges civil conspiracy whereby the Defendants "combined for the purpose of accomplishing, through a concerted action, a fraud on Cole by inducing him to execute the Assignment, giving up his interest in Waypoint, with the promise that Daoud/DIH would provide funding for Viridia." Id. ¶ 140 (ECF No. 1, at 15). He alleges that Daoud's allegedly false statements, as detailed above, "were made in furtherance of the conspiracy." Id. ¶ 145 (ECF No. 1, at 16).

In the 479 case, Cole has not moved to dismiss any of the claims against him, but Daoud and DIH have moved to dismiss two counts in Cole's Counterclaim.  Daoud & DIH's Mot. to Dismiss, No. 2:15cv479 (ECF No. 19).  Because Cole's Counterclaim contains essentially the same claims as the 419 case – except that George is not a party – this report will only briefly discuss Daoud and DIH's 479 Complaint and Cole's Counterclaim.

Daoud and DIH allege that Cole did not have authority to raise money for Viridia by selling shares of stock in DIH. Compl. ¶ 8, No. 2:15cv479 (ECF No. 1-1, at 6).  Despite Cole's lack of authority, he "impermissibly solicited $250,000 of funds from an investor in exchange for shares of stock in DIH." Id. ¶ 9.  From this $250,000.00 investment, Cole advised Daoud that with expenses, the investment only netted $176,000.00 – with $91,000.00 to be paid to Cole, $45,000.00 to be paid to Viridia as a loan, and $40,000.00 to be paid to Daoud.  Id. ¶ 10.  Daoud states that he did not accept the $40,000.00, and he "notified the third party investor ... that Cole was never authorized to issue any shares, and that Cole should return the money immediately." Id. ¶ 11.

Cole continued to attempt to sell shares in DIH, and Daoud and DIH allege that Cole's conduct amounts to fraud and equitable subrogation.  Specifically, in Count I, Daoud and DIH allege that Cole committed fraud by "siphon[ing] money from

Viridia for his personal use," and "falsely represent[ing] to Daoud that the signature pages presented to him were for Viridia transactions when in fact they were DIH subscription agreements."  Id. ¶¶ 20-21 (ECF No. 1-1, at 8).  Relying on Cole's misrepresentations, Daoud signed one of the subscription pages, which resulted in damages for him and his company, DIH. Id. ¶¶ 22-23.  As to Count II, the equitable subrogation claim, Daoud and DIH assert that as a result of Cole's conduct, they are "repaying or are in the process of repaying certain investors who were misled by Cole," and these investments total no more than $57,000.00.  Id. ¶ 27.  (ECF No. 1-1, at 9).

In Cole's Counterclaim, included in his Answer to the Complaint originally filed in Florida, he acknowledges that the claims are also "set forth in Cole v. Daoud, et al., No. 2:15-cv-00419-RBS-RJK, (E.D. Va. filed Sept. 22, 2015)," but he does not include George as a party because he asserts that the Southern District of Florida did not have personal jurisdiction over George.  Def.'s Answer to Am. Compl. & Countercl., No. 2:15cv479 (ECF No. 7, at 10).  As alleged in the 419 case, Cole's Counterclaim also asserts against Daoud and DIH: (1) defamation; (2) tortious interference with business contract

and/or expectancy; and (3) fraud.[5]  Id. ¶¶ 77-124 (ECF No. 7, at 10-26).

### III.  ANALYSIS

**A.   Standard of Review**

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A pleading fails to meet this standard and is subject to dismissal under Rule 12(b)(6) when it does not "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.' "  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "Factual allegations must be enough to raise a right to relief above the speculative level" and beyond the level that is merely conceivable.  Twombly, 550 U.S. at 555.  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not state a claim.  Iqbal, 556 U.S. at 678.

---

[5]  Cole's Counterclaim does not allege civil conspiracy, but is otherwise identical to the allegations against Daoud and DIH in the 419 Complaint.

The United States Supreme Court has described the motion to dismiss analysis in two parts. First, the court must accept the allegations of fact as true. Id. However, a court is not required "to accept as true a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), or a legal conclusion unsupported by factual allegations, Iqbal, 556 U.S. at 678-79. After reviewing the allegations, the court must then consider whether they are sufficient to state a plausible claim for relief. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A Rule 12(b)(6) motion, then, should be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

In addition to considering the facts alleged in the Complaint, the court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." Silverman v. Town of Blackstone, Va., 843 F. Supp. 2d 628, 631 (E.D. Va. 2012). "The Court may also look to documents attached to the complaint and those

incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment." Id.; see also Pueschel v. United States, 369 F.3d 345 (4th Cir. 2004). This includes documents attached to the Motion to Dismiss when the document "was integral to and explicitly relied on in the complaint and the plaintiff[] do[es] not challenge its authenticity." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (quoting Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)).

## B.  Applicable Law

In both cases – 419 and 479 – the court is exercising diversity jurisdiction, and "when sitting in diversity jurisdiction, federal courts must apply state substantive law as announced by the state's highest court." Insteel Indus., Inc. v. Constanza Contracting Co., 276 F. Supp. 2d 479, 483 (E.D. Va. 2003) (citing Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). "Under the rule in Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941), a federal court sitting in Virginia and exercising diversity jurisdiction applies Virginia's choice of law rules." Id. When applying Virginia's choice of law rules, the first inquiry is whether the claim is a contract claim or a tort claim. Id. (citing In re Putman, 110 B.R. 783, 794 & n.25 (Bankr. E.D. Va. 1990); Buchanan v. Doe, 431 S.E.2d 289 (1993)).

Here, George, Daoud, and DIH seek to dismiss Cole's claims of fraud, tortious interference with business contract/ expectation, and civil conspiracy. These claims are properly categorized as tort actions,[6] and as such, "the law of the place of the wrong" applies. Ford Motor Co. v. Nat'l Indemnity Co., 972 F. Supp. 2d 850, 856 (E.D. Va. 2013) (quoting Milton v. IIT Research Inst., 138 F.3d 519, 521 (4th Cir. 1998)). "Under Virginia law, the 'place of the wrong' is the place 'the last event necessary to make an [actor] liable for an alleged tort takes place.' " Id. (quoting Gen. Assurance of Am., Inc. v. Overby-Seawell Co., 533 Fed. Appx. 200, 206 (4th Cir. 2013).

"For claims of tortious interference with contract ... the occurrence of the plaintiff's injury marks the last event necessary to establish liability." Id. (citing Gen. Assurance of Am., Inc., 533 Fed. Appx. at 206). In this case, Cole's injury was the result of George's, Daoud's, and DIH's alleged interference with Cole's contractual membership in Waypoint and an alleged "secret agreement" between George and Daoud. Compl. ¶¶ 87-112, No. 2:15cv419 (ECF No. 1, at 10-12). For Cole's fraud claim, "the place of the wrong is where the loss is sustained, not where the fraudulent representations are made."

---

[6] "Claims for tortious interference with contract ... are properly characterized as intentional torts." Ford Motor Co. v. Nat'l Indemnity Co., 972 F. Supp. 2d 850, 856 (E.D. Va. 2013). Fraud and civil conspiracy are also tort-based causes of action. See Almy v. Grisham, 639 S.E.2d 182, 188-89 (Va. 2015); Diaz Vicente v. Obenauer, 736 F. Supp. 679, 690 (E.D. Va. 1990).

Insteel Indus., Inc., 276 F. Supp. 2d at 486. That is, "the 'last act' necessary for a fraud claim is the reasonable reliance on the false representation that causes an injury." Id. Finally, for Cole's civil conspiracy claim, he must prove that the underlying tort was committed, and thus, the underlying tort determines the place of the wrong. Almy v. Grisham, 639 S.E.2d 182, 188-89 (Va. 2015).

During the period relevant to both cases, Cole resided in Virginia Beach, Virginia, and both companies - Waypoint and Viridia - are Virginia limited liability companies. Compl. ¶¶ 1-2, No. 2:15cv419 (ECF No. 1, at 2). Therefore, any injury or loss Cole sustained as a result of the Defendants' tortious interference or fraudulent actions would have occurred in Virginia. Additionally, although there is some dispute about whether all of the relevant parties signed the agreements at issue in this case, the agreements contain forum selection clauses "providing for exclusive jurisdiction in the state and/or federal courts in the Commonwealth of Virginia." Id. ¶ 35 (ECF No. 1, at 6) (citing ECF Nos. 1-1, § 10.8; 1-2, § 12; 1-3, § 18.4; 1-4, § 18.4). This report will therefore apply Virginia law.[7]

---

[7]  Although the 479 case was transferred from Florida, this report applies Virginia law to Daoud and DIH's motion to dismiss Cole's Counterclaim because the allegations in Cole's Counterclaim are identical to those alleged against Daoud and DIH in the 419 Complaint.

C.   **Count II Fails to Allege Facts Sufficient to State a
     Plausible Tortious Interference Claim Against the
     Defendants.**

Cole has styled his second count as "Tortious Interference
With Business Contract and/or Expectancy."  Countercl., No.
2:15cv479 (ECF No. 7, at 21); see also Compl., 2:15cv419, (ECF
No. 1, at 10).  The contract or expectancy which he alleges the
defendants interfered with appears to be his contractual
membership interest in Waypoint.  Countercl. ¶ 108, No.
2:15cv479 (ECF No. 7, at 23); see also Compl. ¶ 110, No.
2:15cv419 (ECF No. 1, at 12).  However, at other times, the
pleadings describe the interest more vaguely as "a business
relationship and/or expectancy," linked to his work for, or
prior involvement with, Viridia.  Compl. ¶ 109, No. 2:15cv419
(ECF No. 1, at 12).  But, regardless of how the interest is
described, the facts supporting his claim are insufficient to
plausibly allege the elements of tortious interference under
Virginia law.

In order to state a claim for tortious interference, Cole
must plead and prove four elements:

> (1) the existence of a valid contractual relationship
> or business expectancy; (2) knowledge of the
> relationship or expectancy on the party of the
> interferor; (3) intentional interference inducing or
> causing a breach or termination of the relationship or
> expectancy; and (4) resultant damage to the party
> whose relationship or expectancy has been disrupted.

Chaves v. Johnson, 335 S.E.2d 97, 102 (Va. 1985).   In addition, if the contract is terminable at will, or involves only an expectancy of future profit, Virginia law imposes a requirement that the interference be accomplished by improper methods. Dunlap v. Cottman Transmission Sys., LLC, 754 S.E.2d 313, 318 (Va. 2014) (quoting Duggin v. Adams, 360 S.E.2d 832, 836 (Va. 1987)).   Improper methods include those that are illegal or independently tortious such as bribery or fraud, but also conduct that "violate[s] an established standard of a trade or profession, or involves unethical conduct, sharp dealing, overreaching or unfair competition."   Id. at 318 n.5 (quoting Dunn, McCormack &  MacPherson v. Connolly, 708 S.E.2d 867, 280 (Va. 2011)).

The parties in this case disagree about whether Cole must prove improper methods.   Cole claims that his contractual ownership interest in Waypoint was not terminable at will, and therefore, it is unnecessary for him to prove improper methods. The defendants argue that any contract interest related to Cole's employment with, or ownership of, Viridia or Waypoint promised – at most – the expectancy of future profit, and therefore, improper methods are required.   Examining this question, however, reveals a more fundamental defect in Cole's pleading – namely that none of these three defendants are

capable of interfering with Cole's contractual relationship with Viridia, because they are all also parties to that contractual relationship. See Wenzel v. Knight, No. 3:14cv432, 2015 WL 3466863, at *8 (E.D. Va. June 1, 2015) ("Implicitly required in this cause of action is the existence of a third party interferor who is not a party to the contractual relationship, or in the case of a business expectancy claim, is in competition with the plaintiff.").

"In the jurisprudence of tortious interference, it is axiomatic that a party cannot interfere with his own contract." Storey v. Patient First Corp., 207 F. Supp. 2d 431, 448 (E.D. Va. 2002) (citing Fox v. Deese, 234 Va. 412, 427 (1987)). Instead, "a tortious interference claim requires the existence of three actors – the two parties to the contract and a third-party who interferes with, or induces one of the parties to breach, that contract." Id. In addition, an agent is incapable of interfering with the contract of its principal. Wenzell, No. 3:14cv432, 2015 WL 3466863, at *8; see also Neil v. Wells Fargo Bank, N.A., No. 1:13cv644, 2013 WL 4782030, at *2 (E.D. Va. Sept. 4, 2013), vacated on other grounds, 596 Fed. Appx. 194 (4th Cir. 2014) (holding that loan servicer, as an agent of the lender, cannot interfere with the relationship between the lender and borrower). In this case, not only has Cole failed to allege interference by a third party interferor, he has

affirmatively pled dozens of facts establishing that all of the defendants were part of the same "series of related agreements that, together, would constitute a single transaction." Compl. ¶ 29, No. 2:15cv419 (ECF No. 1, at 5). These related agreements, and the facts Cole alleges led up to them, clearly establish that the parties were all involved in a business venture known as Viridia, formed to engage in the multi-level marketing and sale of cosmetics or other retail products. The contractual relationship underlying Count II was Cole's relationship with Viridia. Whether that relationship is defined narrowly, as Cole's ownership of Waypoint, or broadly, as Cole's employment and/or management of Viridia, the result is the same – all three defendants were also parties to that relationship.

The following partial list serves to establish the point:

- George and Cole formed both Waypoint and Viridia in 2013. Compl. ¶¶ 8-9, No. 2:15cv419 (ECF No. 1, at 2-3);

- George agreed to raise capital for Viridia, and Cole was its CEO, working with George to establish the budget. Id. ¶¶ 10-11 (ECF No. 1, at 3);

- George repeatedly promised to raise funds for Viridia, but was unable to do so. As a result,

> Viridia did not pay Cole's salary and other expenses. Id. ¶¶ 14-15;

- After locating Daoud as an investor, Cole agreed to assign his ownership interest in Waypoint based on Daoud's agreement to fund Viridia on terms set out "in a series of related agreements." Id. ¶¶ 26-29 (ECF No. 1, at 4-5);

- Daoud, Cole, George and DIH are all named parties or signatories to several of these written agreements which were drafted to memorialize the terms of a May 2014 e-mail outlining the parties' expectations regarding Daoud's investment. See e.g. Assignment of Membership Interests, No. 2:15cv419 (ECF No. 1-5, at 8-12) (memorializing assignment from Cole to DIH, joined by George as manager of Waypoint, and signed by Daoud for DIH).

These facts - alleged by Cole - establish that all of the defendants are party to the same contractual relationship. In fact, the assignment of the membership interest in Waypoint, which primarily underlies his claim, includes each of the four parties to this lawsuit. Both George and Cole were partners in Waypoint. Both George and Cole are alleged to have transferred their interest to Daoud, rendering him the manager of Waypoint

and by extension, Viridia.  Throughout, Waypoint existed solely
to manage its sole asset Viridia.  After assigning his
membership interest, Cole remained as CEO of Viridia until the
company filed for bankruptcy protection. Compl., No. 2:15cv419
(ECF No. 1, at 8). Thus, all of the individual defendants (Cole,
George, and Daoud) were parties in the "contractual relationship
and/or expectancy" underlying Cole's tortious interference
claim.  The only entity defendant, DIH, was formed for the sole
purpose of acquiring Daoud's interest in Waypoint.  Id. ¶ 20,
(ECF No. 1, at 4).  As a result, while these defendants may have
breached, failed to perform or violated corporate duties, none
of them could have "interfered with" Cole's contract.  Haigh v.
Matsushita Elec. Corp. of Am., 676 F. Supp. 1332, 1349 (E.D. Va.
2009).

Cole specifically alleges that it was Daoud's decision not
to fund Viridia, as Cole alleges he agreed to do, which is the
source of Cole's damages.  These damages, arising from Cole's
disappointed expectations, are quintessentially recoverable in
contract not tort.  Sensenbrenner v. Rust, Orling & Neale
Architects, Inc., 374 S.E.2d 55, 58 (Va. 1988) ("The controlling
policy consideration underlying the law of contracts is the
protection of expectations bargained for.").

Importantly, Cole does not allege that Daoud, DIH, or
George were acting outside the scope of the "single transaction"

24

anticipated by the related agreements.  Indeed, he could not do so.  Having repeatedly asserted that the entire transaction was designed to ensure Daoud would fund Viridia, he cannot claim that his simple failure to do so is somehow "outside the scope of the parties' contractual relationship."  In fact, Cole specifically alleged that DIH was liable to him due to "the acts of its agent [Daoud] made within the scope of his duties."  Compl. ¶ 125, No. 2:15cv419 (ECF No. 1, at 14).

Although Cole has stated, in conclusory fashion, that George and Daoud had "secretly" agreed that Daoud would have no obligation to fund Viridia, his allegation is expressly contradicted by the e-mail correspondence confirming the details of the allegedly "secret" agreement.  Moreover, even if there had been a misrepresentation to Cole, which secured his continued work for Viridia, by itself this would still be insufficient to take the conduct outside the scope of the parties' joint contractual relationship.  Haigh, 676 F. Supp. at 1349 ("Although the scheme may have been illegal it was nonetheless devised . . . to further [the employer's] interests.").  In fact, this court rejected a similar argument in Smith v. Purnell, No. 1:11cv922, 2011 WL 6140868 (E.D. Va. Dec. 9, 2011).  In Purnell, an attorney sued her former client's substitute counsel for an unpaid fee.  She alleged that new counsel had tortiously interfered with her contractual

relationship with her former client.  Among her allegations, she claimed that new counsel had falsely promised her that he would get her bill "paid in full" if she would perform the remaining work necessary to obtain a nonsuit in the case.  Id. at *2.  In denying the claim for tortious interference, the court noted that any statement made by substitute counsel was made as an agent for the original client.  Because the agent could not interfere with his principal's contract, there could be no tortious interference.  Id. at *7.  Likewise, in this case, Cole does not allege the involvement of any person or entity who was not party to the "series of related agreements" underlying this action.  Because he has not alleged any interference by a third party, he has not stated a claim for tortious interference. Brown v. Loudon Golf & Country Club, Inc., 573 F. Supp. 399, 404 (E.D. Va. 1983) ("[O]nly a third party to the contract can be held liable for intentional interference"); Purnell, No. 1:11cv922, 2011 WL 6140868, at *7; Ashco Int'l Inc. v. Westmore Shopping Ctr. Assocs., 42 Va. Cir. 427, 1997 WL 1070624, at *5 (Va. Cir. Ct. June 19, 1997).  Accordingly, Count II of the Complaint and Counterclaim should be dismissed.

D.   **Count III Fails to Allege Facts with the Particularity Needed to State a Plausible Fraud Claim Against the Defendants.**

In Count III, Cole alleges that George, Daoud, and DIH committed fraud by inducing him to continue working without pay and to contribute his owns funds to Viridia. George, Daoud, and DIH moved to dismiss the fraud counts, arguing that the statements Cole relies upon are no more than the failure of a future promise rather than a misrepresentation of existing fact. The defendants also argue that any reliance by Cole on the statements would not be reasonable. See No. 2:15cv419 (ECF No. 7, 16); No. 2:15cv479 (ECF No. 19).

Under Virginia law, a plaintiff may assert a claim for actual fraud or constructive fraud. To prove actual fraud under Virginia law, a plaintiff "must prove by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." State Farm Mut. Ins. Co. v. Remley, 618 S.E.2d 316, 321 (Va. 2005) (quoting Prospect Dev. Co. v. Bershader, 515 S.E.2d 291, 297 (Va. 1999)). For a claim alleging constructive fraud, a plaintiff must "show[] by clear and convincing evidence that a false representation of a

material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation." Id. (quoting Evaluation Research Corp. v. Alequin, 439 S.E.2d 387, 390 (1994)).

Here, Cole alleges that George and Daoud made false statements with the intent to induce him to transfer his interest in Waypoint to Daoud and DIH. Compl. ¶ 121 (ECF No. 1, at 13). He also alleges that he relied on Daoud's and George's false statements about Daoud's intent to fund Viridia, and as a result, "worked without pay for months" and "used his personal money to fund Viridia's operational expenses." Id. ¶¶ 123, 126-33 (ECF No. 1, at 13-14). He alleges that this collusion culminated in a "side deal" between George and Daoud, in which both agreed that Daoud "would become manager of Viridia without having any obligation to provide additional funding to Viridia." Id. ¶ 134 (ECF No. 1, at 15). Neither pleading provides any plausible explanation for why George – who also gave up an ownership position – would have secretly intended that Daoud never fund Viridia. But leaving the motive aside, the facts alleged simply fail to state a fraud claim under Virginia law.

Cole's allegations set forth a basic framework for allegations of fraud, however, in addition to pleading the elements of fraud, a plaintiff must also meet heightened pleading standards under Rule 9 of the Federal Rules of Civil

Procedure.   Rule 9(b) provides that "[i]n alleging fraud ... a
party   must   state   with   particularity   the   circumstances
constituting fraud."   Fed. R. Civ. P. 9(b).   That is, to support
an   allegation   of   fraud,   a   plaintiff   must   "ple[ad]   with
particularity ... 'the time, place, and contents of the false
representations, as well as the identity of the person making
the misrepresentation and what he obtained thereby.' "   Baker v.
Elam, 883 F. Supp. 2d 576, 580 (E.D. Va. 2012) (quoting Harrison
v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir.
1999)).   "Mere allegations of 'fraud by hindsight' will not
satisfy the requirements of Rule 9(b).' "   Id. (quoting Hillson
Partners Ltd. P'ship v. Adage, Inc., 42 F.3d 204, 209 (4th Cir.
1994)).   Additionally, "a fraud claim must be based on the
misrepresentation of a present or pre-existing fact."   Hazaimeh
v. U.S. Bank Nat'l Ass'n, 94 F. Supp. 3d 741, 748 (E.D. Va.
2015) (quoting Albanese v. WCI Communities, Inc., 530 F. Supp.
2d 752, 770 (E.D. Va. 2007)).   "A fraud claim cannot be premised
'on unfulfilled promises or statements about future events,' "
and "[a] promise to perform an act in the future is not, in a
legal sense, a representation as that term is used in the fraud
context."   Id.   A narrow exception to this general rule is that
"when a promisor makes a promise intending not to perform, this
promise constitutes a misrepresentation of present fact if the
promisor intended that the promisee act to his detriment."   Id.

**1. George's Motion to Dismiss Under Rule 12(b)(6)**

George moves to dismiss the fraud claim against him, arguing that Cole improperly attempts to convert a breach of contract claim into a tort claim, and that Cole's Complaint is not pled with the specificity needed to sustain allegations of fraud. George's Br., No. 2:15cv419 (ECF No. 8, at 11-13). As to George's first argument, Virginia law "recognizes the separate tort of fraud, even where the parties have agreed to a contract." City of Richmond, Va. v. Madison Mgmt. Grp., Inc., 918 F.2d 438, 446-47 (4th Cir. 1990). That is, a defendant may "violate[] a duty imposed by tort law, i.e., the duty not to commit a fraud." Id. at 447. The difference between allegations of fraud versus breach of contract is that fraud occurs if "a statement ... is false when made," and a breach of contract occurs if "a promise ... becomes false only when the promisor fails to keep his word." Id. (quoting Lissman v. Hartford Fire Ins. Co., 848 F.2d 50, 53 (4th Cir. 1988)).

Here, Cole alleges that George made false statements, which he claims are separate from any representations in the contract documents, about plans for the future funding of Waypoint and Viridia. He also alleges that through these false statements George induced Cole to sell his interest in Waypoint and to fund Viridia with his personal assets. Compl. ¶¶ 113-38, No.

30

2:15cv419 (ECF No. 1, at 12-15); see also Answer & Countercl. ¶¶ 110-24, No. 2:15cv479 (ECF No. 7, at 110-26).

Although these facts suggest the possibility of tort liability, his fraud claim against George still must be pled with particularity.  On close examination, the facts alleged do not state a claim for fraud under Virginia law.  With respect to George, Cole alleges that:

> On May 29, 2014, George sent an email to Cole (and others), stating that Daoud's minimum funding commitment would be $1,425,000 and, subject to verification at the end of 2014 that the prospect of Viridia's viability was good, Daoud would continue additional funding as reasonably necessary.  George further confirmed that all of the parties - including Cole - would look at Viridia's performance at the end of 2014, to make the determination of Viridia's viability.

Compl. ¶ 126, No. 2:15cv419 (ECF No. 1, at 14) (emphasis added). Cole further alleges that "George made the statements despite knowing they were false at the time they were made," and "[i]n the alternative, George made the statements negligently, recklessly and/or without regard to their falsity."[8]  Id. ¶ 127. This allegation is the only statement attributed to George that attempts to plead fraud with any specificity.  See Compl., No. 2:15cv419 (ECF No. 1).  All other fraud allegations against

---

[8] Although the constructive fraud count is pled in the alternative, it is obvious that George could not have "negligently or recklessly" made a promise of future performance with the present intent not to perform it.  Supervalu, Inc. v. Johnson, 666 S.E.2d 335, 342 (VA. 2008) ("Under no circumstances . . . will a promise of future action support a claim of constructive fraud.").

George are general assertions without reference to specific dates, means of communication, or the content of the representations. And, upon examination of the May 29, 2014, e-mail – from which Cole's allegation is drawn, and which is incorporated into the record by reference[9] - its contents are insufficient to plausibly support the elements of fraud alleged against George. See May 29, 2014, E-mail, No. 2:15cv419 (ECF No. 8-1).

Specifically, in the May 29, 2014, e-mail, addressed to Daoud, George wrote:

> The records that we have been given indicate that Waypoint/Viridia have been capitalized to a total amount of $1,375,000. Full capitalization was to be $2,800,000. Accordingly, and subject to verifying receipt of all the capital indicated to have been allocated to date, $1,425,000 would be your total funding commitment, subject to verification at the end of 2014 that the prospect of viability is good. We will all look at the performance at the end of 2014 and, provided that it appears viable, you will continue additional funding as reasonably necessary.

Id. (emphasis added). George's statements in this e-mail are conditional. He states that Daoud will provide additional funding only if Viridia is viable. At most these statements are

---

[9]  As discussed above, the court may consider the referenced e-mail, the only statement pled with specificity regarding the alleged fraud of George without converting the motion to one for summary judgment. See Harrison v. U.S. Postal Serv., 840 F.2d 1149, 1152 n.7 (4th Cir. 1988) (holding that reliance on exhibits to Motion to Dismiss did not convert the motion to one for summary judgment because "the facts to which the court referred were either alleged in the Amended Complaint or contained in the exhibits thereto"); see also Silverman, 843 F. Supp. 2d at 631.

promises of possible future performance if certain conditions are met.

As discussed above, under Virginia law, "a mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character." <u>Bd. of Trs., Sheet Metal Worker's Nat'l Pension Fund v. Delaware Valley Sign Corp.</u>, 945 F. Supp. 2d 649, (E.D. Va. 2013); <u>see also</u> <u>Hazaimeh</u>, 94 F. Supp. 3d at 748. An exception to this general rule exists if a promisor makes a promise with no intention to perform. <u>See</u> <u>Hazaimeh</u>, 94 F. Supp. 3d at 748. In this case, the representations attributed to George do not fall under this exception for two reasons. First, the statements were conditional, meaning their performance was subject to certain requirements. Cole cannot plausibly assert that he relied on the promise of funding because he knew any funding provided by Daoud was subject to Viridia meeting certain conditions in the future. Second, and more importantly, the representations concern the actions of Daoud and DIH. George could not have formed a present intention not to perform a promise made by another. Therefore, Cole fails to allege facts sufficient to plausibly support a fraud claim against George, and the undersigned recommends that the court grant George's Motion (ECF No. 7) with respect to the fraud claim alleged in Count III.

2.   **Daoud and DIH's Motions to Dismiss Under Rule 12(b)(6)**

Daoud and DIH also move to dismiss the fraud claim alleged in the 419 case and alleged in Cole's 479 Counterclaim.   No. 2:15cv419 (ECF No. 16); No. 2:15cv479 (ECF No. 19).   They argue that the Complaint and Counterclaim (1) fail to plead sufficient particulars as to the alleged fraudulent conduct, (2) fail to detail what Daoud obtained from the alleged fraud, (3) allege "inactionable statements regarding future conduct," (4) allege misrepresentations that are contradicted by the subsequent agreements, and (5) the fraud claim is barred by the statute of frauds because it is based on an unenforceable oral promise to pay the debt of a third party.[10]

Cole's Complaint and Counterclaim both contain at least three allegations that provide the date, means of communication, and general content of Daoud and DIH's false statements.   The first is Cole's reference to Daoud's e-mail exchange with George during which Daoud conditionally agreed to provide future funding to Viridia.   Compl. ¶ 115, No. 2:15cv419 (ECF No. 1, at 12-13); see also Countercl. ¶ 112, No. 2:15cv479 (ECF No. 7, at 24-25).   Cole also alleges that:

> a. On or about April 21, 2015, by phone, while Cole
> was in Virginia Beach, Virginia, Daoud said that if

---

[10]   Although Daoud and DIH raise many arguments in their motions to dismiss Cole's fraud allegations, this report does not address all of the arguments because the undersigned recommends that the court grant their motions due to Cole's failure to plead fraud with the required specificity.

Cole would continue working for Viridia, Daoud would
provide sufficient funding to pay all of Cole's past
and future wages and repay all advances that Cole had
made to Viridia.

b. On October 22, 2014, Cole send [sic] a text message
to Daoud informing Daoud that Cole had (again)
provided funds to pay Viridia's expenses. Cole told
Daoud that he was out of money and could no longer
afford to pay Viridia's expenses out of his pocket.
Daoud responded that he has "been thinking and praying
about it, we will talk tomorrow when you are
available." In the subsequent conversation, Daoud
told Cole to "keep his head up" and that Daoud would
make sure that sufficient funds would be available for
Viridia.

Compl. ¶ 115 a. & b., No. 2:15cv419 (ECF No. 1, at 12); see also

Answer & Countercl. ¶ 112 a. & b., No. 2:15cv479 (ECF No. 7, at

24). Cole also alleges that Daoud's March 10, 2015, e-mail, in

which he rebuked Coke for soliciting stock subscriptions for

DIH, shows that Daoud "never intended to raise money for DIH –

despite assisting with the preparation of the offering and

accepting numerous subscriptions." Compl. ¶ 121, No. 2:15cv419

(ECF No. 1, at 13); see also Answer & Countercl. ¶ 118, No.

2:15cv479 (ECF No. 7, at 25).

As discussed above, conditional promises do not support an

allegation of fraud, and Cole has conflated disappointed

expectations with fraud. Although he alleges that Daoud and DIH

never intended to fulfill their promise, the documents which

clearly define the terms of the future funding he claims was

agreed to establish that any promise was conditioned on

Viridia's viability, as determined by Daoud. See May 29, 2014, E-mail, No. 2:15cv419 (ECF No. 8-1); Viridia, LLC Warrant to Purchase Class C Shares, No. 2:15cv419 (ECF No. 1-2); see also Viridia, LLC Warrant to Purchase Class C Shares, No. 2:15cv479 (ECF No. 7-2). There is no doubt that the promises referred to in these exchanges were memorialized in the Warrant, Operating Agreement, and Cole's Waypoint Assignment. Because all of these reflect funding conditioned on the occurrence of other requirements (such as a demand for funding by a viable Viridia), the result of the promise was necessarily uncertain and any reliance by Cole was not reasonable. That is, as alleged in Cole's Complaint and Counterclaim, all representations made by Daoud were conditional and contained no affirmative obligation to perform. See, e.g., May 29, 2014, E-mail, No. 2:15cv419 (ECF No. 8-1). Therefore, Cole fails to state facts sufficient to plausibly allege that Daoud and DIH made the statements with the intention not to perform. Additionally, Daoud is never alleged to have represented that he would personally repay Cole, only that Viridia might be funded if certain conditions were met. Because Daoud had no obligation to perform and any promise was conditional, the facts alleged in Cole's Complaint and Counterclaim do not support a plausible fraud claim against Daoud.

As to DIH, Cole alleges that "DIH is liable for the acts of its agent made within the scope of his duties." Compl. ¶ 125, No. 2:15cv419 (ECF No. 1, at 14). However, because Cole fails to allege fraud against Daoud - DIH's agent - he is unable to allege fraud against DIH. Accordingly, the facts supporting Cole's allegations against Daoud and DIH are insufficient to plausibly allege the elements of fraud, and the court should dismiss Count III of Cole's Complaint and Counterclaim as to Daoud and DIH.

**E. Count IV Fails to Allege an Independently Wrongful Act, or Other Facts Necessary to Establish a Claim of Civil Conspiracy.**

In Count IV of the 419 Complaint, Cole argues that his allegations of fraud and interference with his ownership interest in Waypoint also state a claim for civil conspiracy under Virginia law. But as the foregoing discussion demonstrates, the defendants are all owners or affiliates of Viridia, and therefore cannot conspire with it or each other. In addition, the duties alleged to have been breached are exclusively contractual and Cole has not satisfactorily pled any independently wrongful or tortious act sufficient to state a claim for civil conspiracy.

The Virginia Supreme Court recently clarified the need for an independently wrongful act to sustain a claim of civil

conspiracy. _Dunlap v. Cottman Transmission Sys. LLC_, 754 S.E.2d 313 (Va. 2014). The court wrote:

> Because there can be no conspiracy to do an act that the law allows, we have held that 'an allegation of conspiracy, whether criminal or civil, must at least allege an unlawful act or an unlawful purpose' to survive demurrer. _Heckler Chevrolet, Inc. v. General Motors Corp._, 230 Va. 396, 407, 337 S.E.2d 744, 748 (1985). In other words, actions for common law civil conspiracy and statutory business conspiracy lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious. _Beck v. Prupis_, 529 U.S. 494, 501, 120 S.Ct. 1608 (2000).

_Id._ at 317 (additional citations omitted). But if the duties allegedly breached arise exclusively from contract, and not from an independent common law duty, there can be no civil conspiracy. _Station No. 2, LLC v. Lynch_, 695 S.E.2d 537, 543 (Va. 2010). A duty of performance under a contract arises solely from the agreement, and not extrinsically by statute, or independently by the common law. _Id._ at 541. A claim of tortious interference with contract or fraud will suffice as the independently wrongful act necessary to plead conspiracy. _Dunlap_, 754 S.E.2d at 218. However, as set forth above, Cole has not plausibly alleged his tortious interference or fraud claims. And a conspiracy merely to breach a contract is insufficient. _Station No. 2_, 695 S.E.2d at 543. In addition, a principal and agent are not separate persons for purposes of a conspiracy. _Charles E. Brauer Co., Inc. v. NationsBank of Virginia, N.A._, 466 S.E.2d 382, 386-87 (Va. 1996); _Perk v._

*Vector Resources Grp., Ltd.*, 253 Va. 310, 317 (1917). All of the defendants were integrally involved in Viridia and they cannot conspire with it or with each other in matters related to it. Accordingly, Count IV should be dismissed for failing to state a claim.

## F.    George's Jurisdictional Motions

Because the undersigned recommends that the court grant George's motion to dismiss under Rule 12(b)(6), his pending jurisdictional motions (ECF Nos. 3, 5) are rendered moot. In addition, as George acknowledges, the various agreements underlying his involvement with Waypoint and Viridia unambiguously render jurisdiction and venue proper in this court. This report has noted and relied upon George's status as a party in those agreements in recommending the disposition of his motion under Rule 12(b)(6). Should Cole abandon reliance on those documents if granted leave to file an Amended Complaint, George should be permitted to assert jurisdictional arguments raised by any amended pleadings. The undersigned, therefore, recommends that the court DENY these motions as moot.

## G.    Leave to Amend

Cole did not file a motion or seek leave to amend in his pleadings. However, at oral argument his counsel suggested that leave to amend be granted if the motions were sustained. Because Cole has not previously amended, and Rule 15 requires

39

that leave to amend be liberally granted, this report recommends the court consider granting leave for Cole to amend his Complaint if the dispositive motions are granted.

## IV.  <u>RECOMMENDATION</u>

For the foregoing reasons, the undersigned recommends that in case number 2:15cv419, the court GRANT Defendant George's Motion to Dismiss Under Rule 12(b)(6) (ECF No. 7), GRANT Defendants Daoud and DIH's Motion to Dismiss Counts II, III and IV (ECF No. 16), DENY as moot Defendant George's jurisdictional Motions (ECF Nos. 3, 5), and DISMISS George as a party. The undersigned further recommends that in case number 2:15cv479, the court GRANT Plaintiffs Daoud and DIH's Motion to Dismiss Counts II and III of Cole's Counterclaim (ECF No. 19). In addition, should these recommendations be adopted, if requested by objection, Cole should receive 10 days to file an amended pleading. Finally, as the two complaints present identical issues regarding the same business transaction, the undersigned recommends that the court consider consolidating and/or merging the cases for trial on the remaining counts.[11]

---

[11]  As recommended by this report, Count I - the defamation claim - is the only remaining count in the 419 case because Daoud and DIH did not move to dismiss this count. Additionally, Cole did not move to dismiss Daoud and DIH's Complaint in the 479 case; accordingly, those counts asserted against Cole would remain.

## V.   REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.   Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.   A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

February 17, 2016

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE